UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA  )<br>  )<br>v.   )   Criminal No. 1:20-cr-00079-JAW<br>  )<br>WILLIAM MEIER  ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

NOW COMES the United States, by and through its attorneys, Donald E. Clark, Acting United States Attorney for the District of Maine, and Chris Ruge, Assistant United States Attorney, and submits this memorandum to assist the Court in its determination of an appropriate sentence.

**I.  Relevant Background**

On March 1, 2021, the defendant pleaded guilty to one count of possession of child pornography depicting a child under 12.  The U.S. Probation office issued its first disclosure of the Presentence Report (PSR) on May 27, 2021.  After receiving objections and comments from the parties, and information concerning the conduct recounted in Paragraph 9A of the PSR, the Probation Office issued a revised PSR on June 28, 2021.  Subsequent revisions were issued on July 12, 2021 and July 14, 2021, addressing the applicable maximum penalty and restitution claims pending before the Court, respectively.  Presentence conference was held telephonically on July 13, 2021.  The sentencing hearing has not yet been scheduled.

**II.  Sentencing Issues**

Based on the objections in the PSR and the discussion at the presentence conference, the government has identified the following issues to be determined by the Court in sentencing:

1

a. Pattern of abuse. The PSR recommended an enhancement under U.S.S.G § 2G2.2(b)(5) based on the conduct set forth in Paragraphs 5, 8, and 9A of the revised PSR. The defendant does not deny the conduct set forth in Paragraph 8 of the PSR. The defendant initially objected to the facts of Paragraph 5 on Fifth Amendment grounds, but at the presentence conference confirmed, through counsel, that he would neither admit nor deny this conduct at the sentencing colloquy. Through counsel, the defendant also specifically denied the factual allegations set forth in Paragraph 9A.[1] The government submits that the uncontested facts set forth in Paragraph 8 of the PSR fully support the pattern of abuse enhancement under applicable law. The government further submits that the Court can and should also find the facts set forth Paragraphs 5 and 9A as further supporting this enhancement, and should also consider them in crafting the appropriate sentence under 18 U.S.C. § 3553(a).

b. Use of a computer. The defendant initially objected to the use of a computer enhancement U.S.S.G. § 2G2.2(b)(6). At the presentence conference, counsel clarified that defendant is making a 3553(a) argument about the application of the enhancement in this case. The government respectfully submits that the defendant's use of a computer in this case is an aggravating circumstance arguing for a higher sentence. The government further submits that the alternate approaches to assessing the gravity of the defendant's offense as described in Paragraph 70 of the PSR also argue for a more significant sentence based on Mr. Meier's course of conduct.

---

[1] Counsel for the government informed the Court and counsel at the presentence conference that in light of this denial the government may ask the Court to also address the appropriateness of the acceptance of responsibility credit, as discussed below. Government Sentencing Exhibit 1 was provided to the defense prior to the presentence conference.

c. <u>Acceptance of responsibility</u>. The defendant has, through counsel, specifically denied the conduct in paragraph 9A of the revised PSR based on age of the described acts. The defendant had previously been provided with a copy of the report detailing the allegations. Those allegations are specific and clear. Moreover, they relate to an enhancement at issue in sentencing. As such, the government respectfully submits the defendant's frivolous denial of the conduct makes any reduction for acceptance of responsibility inappropriate in this case.

d. <u>Restitution</u>. With one exception,[2] the Andy, Vicky, and Amy Act of 2018 applies to all restitution claims in this case. The government respectfully submits that the claims before the Court are in compliance with 18 U.S.C. § 2259, and should be honored as set forth more fully below.

### III. Discussion

**a. The defendant engaged in a pattern of abuse under U.S.S.G. § 2G2.2(b)(5).**

**1. Legal standard.**

U.S.S.G. § 2G2.2(b)(5) provides for a five-point enhancement if the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The application notes to this section define "sexual abuse or exploitation" as:

> (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

---

[2] The images from the series Rap72 were found only in the "carved" space of the defendant's computer drive. The possibility that that the images on that drive were knowingly possessed only sometime in the 11 moths preceding the enactment of the AVAA is discussed more fully below.

3

U.S.S.G. § 2G2.2, application note 1.  This same application note also defines "pattern of activity involving the sexual abuse or exploitation of a minor" as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct

By the plain language of the guideline, application of the enhancement is mandatory for qualifying offenders.  United States v. Plotts, 374 F.3d 873 (10th Cir. 2003) ("A plain reading of [as then-enumerated] subsection (b)(4) shows that it mandates a five-level enhancement for qualified offenders.").

### 2. The uncontested portion of the PSR fully supports the enhancement.

Here, the uncontested facts set forth in Paragraph 8 of the PSR describe multiple instances of attempted sexual exploitation of a minor as proscribed by § 2252(a).  Specifically, Meier, using electronic communications, asked for nude photographs daily, and then moved on to asking for a video of Minor-2 masturbating.  Third Revised PSR, ¶ 7.  Meier made a similar request to Minor-1, asking for a video of her using sex toys after he had stolen images and an explicit video from Minor-1's phone.  Third Revised PSR, ¶ 5.

That these particular acts did not net Mr. Meier his intended result is of no moment to his culpability.  Attempted exploitation of a minor is a violation of § 2251, nonetheless.  See United States v Polk, 546 F.3d 74, 75 (1st Cir. 2008) (defendant convicted of attempted production of child pornography for pressuring undercover agent posing as 13-year-old girl to send sexually explicit images).  See also United States v. Broxmeyer, 699 F.3d 265, 269-71 (2d Cir. 2012) (soliciting nude images to be produced and sent by cell phone constituted attempted production even though clothed images were sent).  Moreover, the application note to U.S.S.G. § 2G2.2(b)(5) specifically includes "attempt or conspiracy" to commit the listed offenses as

4

predicate offenses for the enhancement. U.S.S.G. § 2G2.2, application note 1; United States v. Morgan, 842 F.3d 1070, 1076-77 (8th Cir. 2016) (attempted production of child pornography properly deemed part of predicate for pattern of abuse enhancement).  See also United States v. Cates, 897 F.3d 349, 356 ("it cannot be gainsaid that 'an attempt . . . to commit any of the offenses' constituting sexual abuse or exploitation of a minor is an independent 'instance' contributing to a pattern of 'two or more instances' of abuse.").

### 3. The conduct described in Paragraph 9A is also relevant to the application of the enhancement

The conduct described in Paragraph 9A forms, in part, a similar predicate for the enhancement.  Specifically, the defendant, who was six years older than a girl between the ages of 7 and 9, forced oral-penis contact on her in an attempt to get oral sex.  Government Sentencing Exhibit 1 (Report of Investigation, interview of Minor-3); Third Revised PSR, ¶3.  Meier's motive and intent is confirmed by his other conduct toward Minor-3: exposing himself, rubbing his penis on her neck, and taking her clothing when she was sleeping.

These acts did occur some four decades ago, while the defendant himself was still a teen.  Nonetheless, there is no temporal limit on conduct relevant to this enhancement.  See United States v. Clark, 685 F.3d 72, 79 (1st Cir. 2012) (child pornography defendant's two prior convictions for indecent acts involving minors were sufficient to support 5-level pattern-of-activity enhancement, even though convictions were more than 24 years old); United States v. Woodward, 277 F.3d 87, 90-92 (1st Cir. 2001) (holding that there is no temporal limit on the sexual conduct that may be considered for the pattern of abuse enhancement); United States v. Aberts, 859 F.3d 979 (11th Cir. 2017) (defendant admitted he had engaged in sexual activity when he was "about 16" with younger relatives, who were then under 12 years of age, some 30 years before subject offense).  In United States v. Coffin, one act serving as a predicate for the

pattern enhancement had occurred 18 years prior to the offense, when the defendant was 15 and that victim was 6.  946 F.3d 1, 7 (1st Cir. 2019).  This application of the enhancement was affirmed by the First Circuit.  Id.

The Court is able to rely on the recent report made by the now-adult Minor-3 to HSI (Government Sentencing Exhibit 1).  There is no right confrontation at sentencing, and the Court may rely on hearsay statements.  In addition, the First Circuit has repeatedly held that reliable hearsay is a proper basis for making sentencing determinations.  United States v. Lee, 892 F.3d 488, 492 (1st Cir. 2018) ("A defendant's rights under the Confrontation Clause do not attach during sentencing"); United States v. Luciano, 414 F.3d 174, 178 (1st Cir. 2005) (reaffirming, post-Crawford, that "there is no Sixth Amendment Confrontation Clause right at sentencing.").  Indeed, the First Circuit has held that even hearsay statements of confidential informants may be relied upon, if they otherwise show sufficient indicia of reliability and accuracy.  United States v. Green, 426 F.3d 64, 67 (1st Cir. 2005) (holding that sufficiently detailed, mutually supporting, and internally consistent hearsay from five confidential informants was sufficient to establish the defendant's leadership in the criminal enterprise, his use of stash houses, and his volume of distribution).  See also, Coffin, 946 F.3d at 7.

Police reports that themselves convey indicia of reliability are sufficient foundation for the Court's findings at sentencing.  United States v. Pinet-Fuentes, 888 F.3d 557, 560 (1st Cir. 2018) (police report submitted to show that machinegun was stolen); United States v. Ruby, 706 F.3d 1221, 1228-29 (10th Cir. 2013) (noting that hearsay may be considered at sentencing, if the statements "bear some minimal indicia of reliability") (quoting United States v. Damato, 672 F.3d 832, 847 (10th Cir. 2012)).

Here, the statements made by Minor-3 to HSI in May 2021 are clear and particular.[3] They comport with biographical facts about Mr. Meier's life set forth in the PSR, to include where Mr. Meier lived in his youth, and the names and ages of his brothers. The acts described by Minor-3 also indicate a sexual interest in girls of about 8 that was well reflected in Mr. Meier's collection of child pornography. See Government Sentencing Exhibit 2.[4]

### 4. Meier's pattern of abuse relates directly to the offense of conviction and is appropriately aggravating under Section 3553(a).

As stated above, the application of the guideline is mandatory under the facts of this case, even setting aside the contested relevant conduct. Plotts, 374 F.3d 873. In addition, the defendant's conduct towards minors is particularly aggravating within the context of the crime to which he pleaded guilty.

The most recent conduct at issue occurred at the same time of the offense of conviction: while Mr. Meier was collecting and viewing child pornography, he was actively attempting to obtain newly created sexually explicit images and videos from minors known to him and with whom he worked in an educational setting. Mr. Meier did not content himself to viewing children that had been exploited by others: he set out to exploit minors himself, using his position as an educator to do so.

Similarly, the conduct with Minor-3, though more remote in time and predating the offense conduct, is clearly consistent with Meier's continued sexual interest in children. Moreover, it is an indication that his predation is not a recent phenomenon brought about by

---

[3] In light of the defendant's denial, the government anticipates also providing sworn statements to the same effect as the statements made in the report at GSE 1.

[4] For example, video files entitled "Babyj lol Sweet 7yo Sucks Dick.avi"; "8Yo Girl Sucks Man eats cum.avi"; and "BR160 12yo and 7yo cousins Suck Fuck 69 And Jerk + get Caught.mp4"  GSE 2, pp. 7-8.

7

over-indulgence in the dross at the center of his case. Rather, it indicates that Mr. Meier was willing to cross the line with children as a teen, and he as was similarly willing in his fifties.

### b. The guidelines fairly represent the defendant's significant conduct.

The defendant also asks the Court to exclude U.S.S.G. §2G2.2(b)(6) from its sentencing calculation. The government accepts that the majority of cases prosecuted will doubtless involve the use of a computer, to the extent that this may no longer be a distinguishing feature of offense conduct in the mine-run of cases. Still, the Guidelines as they currently exist give little other avenue to reflect the special nature and harm caused by the use of computers in the modern child pornography trade, such as the sophisticated means the computer allows a defendant to train his sights on a particular type of young victim being violated in a particular way, or the ability to use specialized software and online services to avoid detection and eliminate evidence of relevant conduct that should otherwise be considered by the court. The Court might also consider these factors under its Section 3553(a) analysis, particularly the defendant's use of the onion router (TOR), on what is commonly referred to as "the dark web," and his apparent ability to amass a huge collection of child pornography and videos pertaining to specific genres of abuse.

As noted in the PSR at Paragraph 70, the Sentencing Commission has made reports to Congress about the degree to which the current guidelines distinguish between offenders. Notably, Congress had declined to change the current mandated guidelines. Neither has it reduced the applicable mandatory minimum sentences. The obvious interpretation is that Congress takes these crimes seriously, and has taken concrete steps to encourage lengthy sentences for these serious offenses. Polk, 546 F.3d 76-77.

The Commission has suggested some alternate factors to apply:

(1) the content of an offender's child pornography collection (volume, type of sexual conduct depicted, ages of the victims, and the organization, maintenance, and protection of the collection over time); (2) the degree of an offender's engagement

> with other offenders, in particular, in an internet community devoted to child pornography and child sexual exploitation; and (3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

U.S. Sentencing Commission, REPORT TO CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES, February 27, 2013; Third Revised PSR. ¶70.

Even under the Sentencing Commission's proposed alternate factors, the defendant's conduct is of the more serious type. The content of Meier's collection, in terms of volume, ages of children depicted, and the sexual exploitation to which they are subjected, is staggering. His use of TOR indicates an intent and desire to evade detection, while seeking out the most graphic "PTHC" material available from like-minded individuals. And he has a history—both recent and remote—of exploitive and predatory conduct toward the same types of minor females that are to be found in his vast collection of exploitive images and videos. Accordingly, by whatever standard of the Guidelines or whatever standard of the 3553(a) factors, Mr. Meier is a significant offender who merits a significant sentence.

### c. The defendant's false denial of the factual assertions in Paragraph 9A of the revised presentence report is inconsistent with acceptance of responsibility.

As set forth above, the conduct in paragraph 9A is relevant to a sentencing enhancement in this case. It is therefore, as this Court and the First Circuit have observed, relevant conduct within the meaning of U.S.S.G. § 3E1.1, application note 3. Frivolous denials of relevant conduct are inconsistent with an acceptance of responsibility. See id.; see also United States v. D'Angelo, 802 F.3d 205, 209 (1st Cir. 2015). Falsely denying or frivolously contesting relevant conduct is an appropriate basis to deny an acceptance of responsibility enhancement. See United States v. Cates, 897 F.3d 349, 355 (1st Cir. 2018).

Here the defendant flatly denies the conduct at issue, and he furiously contests the veracity of the report as being unreliable due to the time that has passed since the initial events. Of course, the same criticism might be made of Mr. Meier's apparent lack of recall of these events. For the reasons described above, the report by Minor-3 has several indicia of credibility. Moreover, there is no identifiable benefit to Minor-3 making a false report to HSI. It is apparent from the reports themselves that the described incidents left a lasting impression on Minor-3. There is nothing about the passage of time or the tender age of the witness at the time that seriously calls into question the veracity of the report. Accordingly, the defendant's denial and contestation of this report is both false and frivolous, and should naturally result in the denial of any credit for acceptance of responsibility he might otherwise receive.[5]

### d. Restitution should be paid to the victims who have made claims.

Restitution is mandatory. 18 U.S.C. § 2259. The claimants in this case have each submitted proper claims compliant with the statute as revised by the Amy Vicky and Andy Act, and with United States v. Paroline, 572 U.S. 464, 134 S.Ct 1710 (2014). As the Court observed in Paroline, the victims' costs of treatment and lost income resulting from the trauma of knowing men like Mr. Meier find gratification viewing the images and videos of their sexual abuse are, in fact, direct and foreseeable.

Since the disclosure of the Third Revised PSR, four additional claims have been received: Misty (Amy); PinkHeartSisters1; BluesPink1; and PD11.

The following table is a compilation of claims by series names, with notes concerning the number of files Mr. Meier possessed from each series. For reference, jpg files are image files, while mp4 and avi files are videos; gif files are a collection of images that effectively act as a

---

[5] The government is prepared to provide additional sworn statements from Minor-3 under penalty of perjury. Of course, acquiescing after such statements are provided will not erase the central fact of Mr. Meier's false denial.

very short video. There were 15 images total from the 8Kids series, each involving one or both of John Doe IV and John Doe V.

| SERIES | No. of Files | Claim Amount |
|---|---|---|
| 8Kids (John Doe IV) ED | 15 jpg total | 3000 |
| 8 Kids (John Doe V) LD | 15 jpg total | 3000 |
| At_School (Violet) | 16 (at least 5 mp4) | 10,000 |
| BluePillow1 | 60 jpg | 5000 |
| CinderBlockBlue (Jane) | 12 (11 jpg, 1 mp4) | no less than 3000 |
| J_Blonde | 1 jpg | 9,000 |
| Jan_Socks 1 | 31 jpg | 10,000 |
| Jan_Socks 2 | 14 jpg | 7,500 |
| Jan_Socks 3 | 15 jpg | 7,500 |
| Jan_Socks 4 | 9 jpg | 7,500 |
| Jenny | 28 (includes avi and gif) | no less than 3000 |
| Marineland 1 | 24 (1 avi) | 15,000 |
| PinkHeartSisters2 (Tori) | 16 jpg | no less than 3000 |
| Rap72 (Jack) | 2 jpg | 5,000 |
| RapJerseys (Kauzie) | 3 jpg | 5,000 |
| SpongeB (Andy) | 5 (4 jpg, 1 gif) | 58,415 |
| Sweet White Sugar (Pia) | 58 (includes mp4/avi) | 5,000 |
| Tara | 97 (includes some video) | 3000 |
| Lighthouse1 (Maureen) | 1 jpg | 10,000 |

| | | |
|---|---|---|
| Misty (Amy) | 6 jpg | no less than 3000 |
| PinkHeartSisters1 | 22 jpg | no less than 3000 |
| Teal&Pink Princess2 | 4 (1 mp4, 1 gif) | no less than 3000 |
| BluesPink1 | 12 jpg | no less than 3000 |
| PD11 | 1 mp4 | 3,000 |

It should be noted that the two files depicting Rap72 were from the "carved" space of the defendant's hard drive manufactured in January 2018. Therefore, there is some possibility that Mr. Meier possessed and deleted those images prior to the enactment of the AVAA on December 7, 2018, but after the January 24, 2018 manufacture date of the drive in which they were found. The government nonetheless respectfully submits that $3,000 represents an appropriate non-nominal sum in accordance with Paroline, as has been determine by Congress with the passage of the AVAA.

Undersigned counsel has contacted counsel for all represented claimants. Counsel have specifically represented, within the past week, that each claimant has uncompensated damages that exceed the claim amount presented in their claim materials.[6] Undersigned counsel understands that the victim in the Tara series had contact with our office in July and indicated substantial outstanding damages at that time.

Each presented claim is supported by the materials already provided to the Court. The government respectfully submits that under the applicable statute, $3,000 is the minimum amount to be awarded. The statute does not indicate or otherwise imply that this amount is to be the mode, average, or default sum ordered. Claimants in this case have made claims based on

---

[6] Counsel for PinkHeartSisters 1 & 2 and Teal&PinkPrincess 1 has specifically asserted uncompensated damages in excess of $3,000 and indicated additional information that will allow some quantification of that amount will be forthcoming. In any case, counsel has asserted projected counselling costs for the foreseeable future which would independently support a finding of uncompensated damages in excess of the claim amount.

their overall demonstrated damages.  Some children suffered more trauma than others.  Some need more treatment than others, are less able to work than others, or have a greater amount of other compensable damages.  It follows that those offenders, like Mr. Meier, who revel in the recorded sufferings of these more-damaged victims cause more additional harm, and are therefore more financially responsible in terms of restitution.  Further, the Court should consider, per <u>Paroline</u>, the quantity of images the defendant possessed of each claiming victim.  This is a measure of the harm the defendant himself has caused in this case, and of the level of exploitation he, personally, has visited upon each victim.   In this case the defendant has a notable collection, with over 4,400 files from NCMEC identified victims alone, spanning 343 series.  It is to be expected, under these circumstances, that Mr. Meier's debt to the depicted victims would be higher than that of defendants in cases where fewer images were at issue.  The defendant has more than a dozen images or videos of many of the victims in this case.  The government is prepared to provide additional in information and exhibits pertaining to the substance of the files the defendant possessed of each victim.

      The defendant has not yet stated his position of any particular claim in this case, but it is anticipated that the defendant and some victims may reach accord prior to sentencing.

Date:   August 19, 2021                          Respectfully submitted,

                                                 DONALD E. CLARK
                                                 Acting United States Attorney


                                                 **BY:  /s/ CHRIS RUGE**
                                                 CHRIS RUGE
                                                 Assistant United States Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that on August 19, 2021, I electronically filed the GOVERNMENT SENTENCING MEMORANDUM with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Matthew Morgan, Esq., at mmorgan@mckeelawmaine.com

                                                 Donald E. Clark
                                                 Acting United States Attorney

                                                 BY:  /s/ Chris Ruge, Esq.
                                               Chris Ruge
                                               Assistant United States Attorney
                                               United States Attorney's Office
                                               202 Harlow Street, Suite 111
                                               Bangor, ME 04401
                                               (207) 945-0373
                                               chris.ruge@usdoj.gov